Filed 7/1/13  In re K.P. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re K.P. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057921 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ016294) |
| v. | OPINION |
| K.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

K.P., age two, and K.M., less than one year, became dependents as a result of long-term drug abuse and the extensive criminal histories of their parents.[1] Mother's parental rights as to two older children had previously been terminated, so the court denied services to mother, but granted services to the father of K.M. Services to the father of K.M. were terminated at the six-month review hearing and a hearing pursuant to Welfare and Institutions Code[2] section 366.26, was set for both children. During the interval prior to the section 366.26 hearing, mother completed a three-month residential drug rehabilitation program, gave birth to another child who remained in mother's care, and resided in a sober living home, which formed the basis for a petition to modify the prior court order pursuant to section 388. The court denied the petition and terminated parental rights. Mother appealed.

On appeal, mother challenges the denial of her section 388 petition as an abuse of discretion. We affirm.

## BACKGROUND

On October 20, 2011, the Riverside Department of Public Social Services (DPSS) received a referral for K.P., then age 21 months, and K.M., then seven months of age. Mother had been arrested following a parole sweep of her residence during which she was found to be in possession of methamphetamine, narcotic medication, checks and

---

[1] The fathers of K.P. and K.M. are not involved in this appeal. They will be mentioned only where needed for context.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

credit cards; in addition, a registered sex offender was in the apartment. Mother's history revealed long-term use of methamphetamine, commencing when she was 11 years old, when she was in foster care herself. She also had an extensive criminal history involving drug offenses, as well as stolen checks and credit cards.

Both parents had child welfare history, having lost custody of two other children prior to DPSS involvement with K.P. and K.M. On May 25, 2010, their parental rights had been terminated as to two older children. On October 28, 2011, the current dependency petition was filed alleging parental neglect (§ 300, subd. (b)), and leaving the children without provision for support. (§ 300, subd. (g).) As to mother, the allegations were based on her extensive history of substance abuse, her arrest and incarceration following the parole sweep, and her prior history with DPSS wherein mother was provided services but failed to benefit from them, leading to her permanent loss of custody of two other children. The court ordered that the children be detained out of home pending a jurisdictional hearing.

The report prepared for the jurisdictional and dispositional hearing revealed more information about mother's addiction to methamphetamine, which began when she was a foster child, herself. Mother's first child, born in 2002, tested positive for methamphetamine at birth. In 2004, that child, J.H., was declared a dependent and mother was offered family maintenance services. That dependency was terminated in 2005.

In 2006, another referral was received by the Child Protective Services (CPS) when mother was arrested for burglary while her child was with her. A dependency

3

petition was filed relating to J.H., who was declared a dependent in January 2007. Services were denied in that dependency due to the length of mother's incarceration. However, in 2008, the court granted mother's 388 petition as to J.H. and ordered reunification services for mother.

Mother failed to complete the case plan, resulting in termination of those services in January 2009, when a new referral was made on behalf of mother's second child, L.P. Mother was denied services again, and on May 25, 2010, mother's parental rights as to J.H. and L.P. were terminated. Based on the length of mother's substance abuse, spanning approximately 20 years,[3] and her failure to reunify with two other children in previous dependency cases or to treat the underlying problems (ref. § 361.5, subdivisions (b)(10), (11), (13)), the social worker recommended denial of reunification services in the current dependency.

On January 18, 2012, the court sustained the petition and adjudged the children to be dependents pursuant to section 300, subdivisions (b) and (g). The court removed custody of both children from the parents, and ordered reunification services for the father of K.M. only. As to mother, the court made findings pursuant to section 361.5, subdivisions (b)(10), (11) and (13), and denied reunification services for her. The court

---

[3] Mother was born in 1981 and started using drugs when she was 11 years old, or 1992. The jurisdictional hearing in the instant proceeding took place in 2012, or approximately 20 years later.

4

set a section 366.26 hearing for K.P., to select and implement a permanent plan for that child.[4]

The section 366.26 report prepared for K.P. indicated that both children were placed with K.M.'s paternal uncle. The caretakers originally indicated a willingness to adopt both children. During this time, mother was participating in an inpatient treatment program, from which she was scheduled to graduate in May 2012. Mother also visited consistently, and the end of the visits was traumatic for K.P., who wept profusely when mother left.

In the July 2, 2012, report, prepared for K.M.'s six-month review hearing (§ 366.21, subd. (e)), it was revealed that mother had been arrested by her parole officer on June 5, 2012, for being under the influence of methamphetamine, at which time mother was five months pregnant with her fifth child. This was apparently mother's third positive drug test, so the parole officer attempted to get mother placed in a custodial drug treatment program. Mother was released from custody on June 29, 2012, and went straight into the New Hope program. The report prepared for K.M.'s six-month review revealed that mother visited the children consistently, and that her visits were adequate, with mother occasionally providing nurturance to the children, and engaging them in problem solving. The social worker noted there appeared to be a maternal bond.

---

[4] Although the clerk's minutes of the hearing show the findings made pursuant to section 361.5, subdivision (b)(10), (11) and (13), they do not indicate that services were denied to mother. Additionally, the clerk's minutes incorrectly reflect that the juvenile court set a hearing pursuant to section 366.26 as to both children.

K.M.'s father also tested positive for methamphetamine and was arrested in April 2012. He had been discharged from his drug treatment program for failure to participate a month after enrolling. Because of father's chronic and unresolved addiction problems, as well as his failure to comply with plan objectives, the social worker recommended that services to him be terminated and that K.M.'s case be set for a 366.26 hearing. On July 17, 2012, the court conducted the six-month review hearing as to K.M., terminated the father's reunification services, and scheduled a section 366.26 hearing for K.M.

In the meantime, the caretakers of the two children informed the social worker that they no longer planned to adopt K.P., because they were taking another nephew into their home. Their apartment was not sufficient for all the children, so they planned to adopt K.M. only, as she was a blood relative. Additionally, K.P. was frightened of movies, amusement parks, and going out to dinner, crying profusely, which affected family time for the caretakers. K.P. was removed from this home and placed with her former foster mother before being placed in the home of the adoptive parents of her older half-sibling, J.H., and full sibling, L.P.

On October 19, 2012, mother filed a petition to modify the prior order, seeking return of the children with maintenance services, or reunification services. The petition asserted mother had completed a residential drug program between June 29, 2012, and September 26, 2012, which program also entailed parenting classes, a domestic violence/anger management program, individual counseling, and Narcotics Anonymous/Alcoholics Anonymous meetings. She also asserted she had tested clean,

6

maintained her sobriety, and shared a strong bond with the children through regular visits. The court ordered a hearing on the petition.

On October 30, 2012, the social worker submitted a postpermanency review report, recommending termination of parental rights. The report described mother's consistent visitation with the children since her release from prison and revealed that K.P. cried when she left her mother at the first visit. However, in September, the minor was able to leave mother without any problem. Nevertheless, the visits went well with mother providing nurturance and meeting the child's needs during visits. The social worker recommended adoption of K.P. by her adoptive parents, who had adopted K.P.'s older sibling and half-sibling. The social worker recommended adoption of K.M. by her paternal uncle, with whom K.M. had been placed since April 2012, and appeared to be bonding.

The combined section 388 and 366.26 hearing was held on December 6, 2012. Mother testified at the hearing that her circumstances had dramatically changed based on her successful completion of the residential treatment program and six months of sobriety. She provided the results of a hair follicle test which was negative for the presence of drugs for hair samples collected on November 6, 2012. Mother gave birth to her fifth child, M.M., in October 2012, prior to her discharge from New Hope Rehabilitation Inpatient Program. That child, who was seven weeks old at the time of the hearing, was maintained in mother's custody. Upon mother's discharge from New Hope, she entered a sober living home and enrolled in Mom's Program, an intensive outpatient program.

7

The court considered the mother's testimony along with the social worker's reports and addenda. Although impressed with mother's efforts to turn her life around, the court concluded mother was in the process of changing and not yet sufficiently changed to warrant a change of the prior order. The court denied the section 388 petition.

Turning to the selection and implementation hearing (§ 366.26), the court determined that it was likely the children would be adopted. The court, considering the testimony provided by mother in support of her section 388 petition, found that none of the exceptions found in section 366.26, subdivision (c)(1)(A) or (B) applied, and that termination of parental rights would not be detrimental to the children. It then terminated the parental rights of mother and both fathers. Mother timely appealed.

## DISCUSSION

Mother argues on appeal that the court erroneously denied her section 388 petition.[5] Such a petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *In re S.J.* (2008) 167 Cal.App.4th 953, 959.) When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. (*Stephanie M.,* at p. 319.)

---

[5] Mother argues that reversal of the section 388 order requires reversal of the order terminating parental rights, but makes no separate argument for reversal of the termination of parental rights.

A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child. (*In re Stephanie M., supra,* 7 Cal.4th at pp. 316-317.) The parent bears the burden of showing both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529.) Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.)

In evaluating whether the petitioner has met his or her burden to show changed circumstances, the trial court should consider: (1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been. (*In re Kimberly F., supra,* 56 Cal.App.4th at p. 532.)

Not every change in circumstance can justify modification of a prior order. (*In re A.A.* (2012) 203 Cal.App.4th 597, 612 [4th Dist., Div. Two], citing *In re S.R.* (2009) 173 Cal.App.4th 864, 870.) For a parent with an extensive drug history punctuated by treatment and relapses, the parent must show that his or her circumstances have actually changed, and are not merely changing. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

"It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform." (*In re Kimberly F., supra,* 56 Cal.App.4th at p. 531, fn. 9.)

For this reason, even a showing of great effort to make improvements will not necessarily be persuasive when a parent has an extensive history of drug use. (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [4th Dist, Div. Two].) Periods of sobriety following relapse do not necessarily demonstrate a changed circumstance where the parent has a history of alternating drug use and sobriety. (See *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423.)

In *In re Amber M.* (2002) 103 Cal.App.4th 681, mother filed a section 388 petition after completing domestic violence and sexual abuse treatment programs, as well as the residential portion of a substance abuse program. Mother had abused controlled substances for more than 17 years and she had been clean for 372 days at the time of the section 388 hearing, with two relapses during the course of the dependency, one of which occurred after more than 300 days of sobriety. At the time of the hearing, mother was living in a sober living unit. (*Amber M.,* at p. 686.) The reviewing court affirmed the juvenile court's denial of the section 388 petition because while mother was progressing in treatment, return to her custody would not be in the children's best interests, although it reversed the termination of parental rights because of a beneficial parent-child relationship. (*Amber M.,* at pp. 687, 691.)

Similarly, in *In re Cliffton B., supra,* 81 Cal.App.4th 415, the reviewing court ruled that father's section 388 petition was properly denied. There, father had experienced seven months of sobriety since a relapse that occurred earlier in the case, and

10

had a drug use history dating back to his college days. Since then his periods of sobriety alternated with recurring drug use. After the initial detention of his children, it took father six months before he was able to stay sober for any length of time, and then, after eight months of sobriety, he relapsed, followed by the most recent period of sobriety. (*Cliffton B.,* at p. 423.) The reviewing court concluded that father's recent 200 days of sobriety was not enough to reassure the juvenile court that the most recent relapse would be his last. (*Id.* at p. 424.)

In this case, mother's situation is similar to those of the parents in *Amber M.* and *Cliffton B.* Although mother described her circumstances as dramatically changed, her situation was actually the same: she was experiencing a period of sobriety following a relapse of substance abuse, which was a continuing pattern. Mother's recent period of sobriety was for a mere six months (admittedly a huge change for mother), but she was still in a sober living home at the time of the hearing, functioning within a structured environment. She had never demonstrated the ability to maintain sobriety without the structure and assistance of a program.

The trial court was impressed by mother's efforts to turn her life around, as are we, but given her very long history of chronic substance abuse, commencing when she was 11 years old, and her continuing pattern of relapses, six months of sobriety is simply insufficient to establish mother's circumstances had actually changed. (Mother was 31 at the time of the hearing, so she had a 20-year history of substance abuse.)

We agree with the juvenile court's conclusion that mother had not met her burden of demonstrating changed circumstances. Having failed to meet the first prong of section

11

388, we do not need to address whether the proposed modification would be in the children's best interest, other than to reiterate the conclusion of our sister court that while mother was progressing in treatment, return to her custody would not be in the children's best interests. (*In re Amber M., supra,* 103 Cal.App.4th at p. 687.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ<br>
P. J.

We concur:

MILLER
              J.

CODRINGTON
              J.